### UNITED STATES v. SMITH et al.

(Circuit Court of Appeals, Fifth Circuit. March 8, 1926.)

No. 4627.

1. Seamen ⊜⇒24.

Crew of vessel entering port for repairs, not to load or unload cargo, *held* not entitled to make demand for half wages, under Rev. St. § 4530, as amended (Comp. St. § 8322).

2. Seamen ⊜⇒21—Seamen, abandoning ship on refusal of improper demand for half wages, held deserters, not entitled to wages, nor excused from performing by seamen's strike (Rev. St. §§ 4530, 4596, as amended [Comp. St. §§ 8322, 8380]).

Crew of vessel, improperly abandoning it on refusal of demand for half wages, which, under Rev. St. § 4530, as amended (Comp. St. § 8322), they were not entitled to make, *held* deserters, under section 4596, as amended (Comp. St. § 8380), and not entitled to recover wages, nor could they recover on unpleaded ground that fear of personal violence at hands of striking seamen excused their abandonment of ship and performance of contract.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Libel by H. N. Smith and others against the United States. Decree for libelants, and the United States appeals. Reversed, with directions to dismiss.

Certiorari denied 46 S. Ct. 638, 70 L. Ed. ——.

Edouard F. Henriques, Sp. Asst. in Admiralty to U. S. Atty., Geo. H. Terriberry, and Walter Carroll, all of New Orleans, La., for the United States.

W. J. Waguespack and Herbert W. Waguespack, both of New Orleans, La., for appellees.

Before WALKER and BRYAN, Circuit Judges, and GRUBB, District Judge.

BRYAN, Circuit Judge. This is a libel by the crew of the steamship Hahira for wages, in which it is alleged that the master failed to comply with a demand for half wages at the port of New Orleans, and that the crew thereupon became entitled, under R. S. § 4530, as amended (Comp. St. § 8322), to the balance of wages earned and remaining unpaid. The defenses were that the cargo had not been loaded or delivered at New Orleans, that nevertheless the master had paid or offered to pay one-half of any amount earned by any member of the crew, and that the crew deserted, and thereby forfeited all claims to wages which had been earned.

The District Judge held that there had not been a refusal to pay half wages, but that the crew ought not to be classed as deserters, for the reason that they left the ship through fear of personal violence at the hands of members of the Seamen's Union, who were engaged in a strike. He therefore entered a decree in favor of the crew for their wages. The United States, owner of the Hahira, has taken an appeal.

In April of 1921 the crew signed shipping articles for a voyage from Baltimore to Mexico and one or more ports in the Gulf of Mexico, and such other ports as the master of the Hahira might direct, and back to a final port of discharge north of Cape Hatteras, for a term not to exceed six calendar months. Under these shipping articles the vessel proceeded from Baltimore to Mexico, took on a cargo of crude oil, and unloaded it at Baton Rouge on April 27. The vessel then proceeded to New Orleans, where it arrived the next day. It stopped there, not for the purpose of taking on or discharging cargo, but in order to have its windlass repaired. The seamen's strike began on May 1, and because of it some of the parts necessary to be used in repairing the windlass could not be obtained in New Orleans, but had to be ordered from a distance. As a result, the Hahira remained at New Orleans until May 16.

Upon arrival at Baton Rouge, the master offered to pay to the members of the crew any part of their wages, not exceeding one-half, and they received various amounts. Again, on May 5, like advances of wages were made and received at New Orleans. On May 10 the members of the crew who filed the libel left the service of the ship, taking their clothes with them. The next day they returned and demanded the payment of full wages, less advances. The evidence is in conflict upon the question whether some of the crew demanded half wages before leaving on May 10, but it is undisputed that the crew had no intention of returning to the service of the ship.

[1, 2] The averment of the libel, to the effect that the crew were entitled to half wages at New Orleans, is not sustained by the evidence. On the contrary, it affirmatively appears that they were not entitled to make demand for half wages at New Orleans, as no cargo was either loaded or delivered at that port. It therefore becomes immaterial whether the demand for half wages was made before or after the crew had taken their effects and quit the service of the ship. Recovery was had on a state of facts different from that relied on in the libel, namely, that the danger of violence at the hands of strikers excused libelants from performing their contract. It was not even suggested in the libel that there was any such danger. Aside from that, it is not claimed in the testimony that the crew would have been in any danger whatever if they had remained on board, nor that the ship was unable or unwilling to afford them full protection against violence. We are therefore of opinion that the crew must be held to be deserters, under R. S. § 4596, as amended (Comp. St. § 8380). The Belgier (D. C.) 246 F. 966; The Italier, 257 F. 712, 168 C. C. A. 662; The M. S. Elliott (C. C. A.) 277 F. 800.

The decree is reversed, with directions to dismiss the libel.